IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-01139-MSK-BNB

TOMMIE SMITH,

      Plaintiff,

v.

SERGEANT VIRGIL NICHOLS,

      Defendant.

---

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court on Defendant Sergeant Virgil Nichols's Motion for Summary Judgment (**#88**), to which Plaintiff Tommie Smith responded (**#92**).  Having considered the same,[1] the Court **FINDS** and **CONCLUDES** the following.

### I.  Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1] The Court is mindful that Mr. Smith is proceeding *pro se* and, therefore, the Court construes his pleadings liberally and holds him to a "less stringent standard" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court, however, cannot act as a *pro se* litigant's legal advocate, and a *pro se* plaintiff retains the burden to allege sufficient facts to state a viable claim. Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the same standard to counsel licensed to practice law and to a *pro se* party.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

## II.   Issue Presented

The Plaintiff asserts a single claim for unconstitutional use of excessive force by Sergeant Nichols[2] on February 24, 2009. The Plaintiff alleges that, without justification, Sergeant Nichols slammed him to the ground and kneed him in the back while he was handcuffed behind his back.  In his Motion for Summary Judgment, Sergeant Nichols asserts the defense of qualified immunity, contends that Mr. Smith cannot establish the claim he asserts, and argues that any claim against him in his official capacity is barred by the Eleventh Amendment.

## III.   Material Facts

The Court has reviewed all of the parties' submissions.  For purposes of this Motion only, the Court construes all disputed facts most favorably to Mr. Smith.  Furthermore, because Mr. Smith is proceeding *pro se*, the Court construes his pleadings liberally, treating all allegations for which he has personal knowledge as if they had been attested to under penalty of perjury.  Viewing the facts in such light, the material facts are as follows.

Mr. Smith is incarcerated at the Sterling Correctional Facility in Sterling, Colorado.  On February 24, 2009, Mr. Smith was ordered to be placed in administrative segregation based on an unidentified event that occurred during his GED class.  Following the incident he refused to be handcuffed, and the "First Responders"[3] were called.  The First Responders were able to convince Mr. Smith to "cuff up" and he was escorted, while handcuffed behind his back, to the shift commander's office.  The shift commander determined that Mr. Smith would be placed on

---

[2]  Mr. Smith's complaint (**#22**) delineates three separate claims, but review of them as they pertain to Sergeant Nichols reveals that they all pertain to the same incident.

[3]  The briefing does not include a description of the role of the First Responders within the prison system.  It appears that they are called to assist when a prisoner is non-compliant.

Removed from Population status.

Prior to being placed on this status, Mr. Smith was required to submit to a strip search.[4]
Mr. Smith refused to submit to such a procedure, and refused to disrobe.  Mr. Smith was then
transported to the distribution room to be strip searched.  After he indicated that he would submit
to a strip search, the handcuffs were removed.

Sergeant Nichols was told that Mr. Smith was being non-compliant and difficult.  He
entered the distribution room and ordered Mr. Smith to remove his clothing.  Mr. Smith did not
comply.  Mr. Smith "did not want to strip [sic] down and comply with D.O.C. Rules."  Sergeant
Nichols ordered Mr. Smith to "stand back" and to place his hands behind his back to be
handcuffed again.  Mr. Smith responded by telling Sergeant Nichols not to hit him in his head
because he had a head trauma injury and a breathing problem, as detailed in his medical file.
Sergeant Nichols replied by asking whether Mr. Smith was threatening him and his staff.  Mr.
Smith answered "no."

Another correctional officer then placed a restraint chain around Mr. Smith's waist and
handcuffed his hands to it behind his back.  He was ordered to sit down.  He began to comply by
crossing his legs and kneeling down, but was then "lifted off the ground" by Sergeant Nichols.
He was "slammed to the ground" and heard a "crunch sound" when his chest hit the ground.
Sergeant Nichols drove his knee into Mr. Smith's back, which caused Mr. Smith's chest "to
crush to the ground."  In this position Mr. Smith  was unable to resist in any way, but he

---

[4]  Mr. Smith refers to the requirement as a "strip search" while Sergeant Nichols refers to
it as a "anatomical medical examination."  The difference, if any, in the terms is not clear from
the briefing.  However, for purposes of this Order, it is sufficient to note that an examination
which required Mr. Smith to disrobe was required.  Construing the facts in favor of Mr. Smith,
the Court shall refer to the examination as Mr. Smith does—as a "strip search."

complained that he could not breathe, and pleaded for help from the other correctional officers in the room.  Sergeant Nichols continued to yell at Mr. Smith to stop resisting, and continued to drive his knee into Mr. Smith's back.  Sergeant Nichols also "struck a blow to the right side of Mr. Smith's ribcage." Mr. Smith was having trouble breathing, began to black out and was having trouble hearing.

After an unspecified amount of time, Sergeant Nichols was removed.  Two other correctional officers sat Mr. Smith up.  Mr. Smith he realized that he had urinated on himself and had blood in his mouth from a cut inside his mouth.  His front tooth cap also had come off.  Mr. Smith saw that another officer was holding Sergeant Nichols away from Mr. Smith.

Mr. Smith was transported in a restraint chair to the segregation ward.  Another officer conducted a strip search, during which Mr. Smith lost consciousness.  The nurse used two ammonia sticks to rouse Mr. Smith.  While another officer was photographing Mr. Smith, he had a "little seizure."  Mr. Smith did not receive further medical attention, but was told by a nurse that his injuries would heal on their own.

## IV.   Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

When the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(e).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and enters judgment.

When the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.  If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### V.   Analysis

Sergeant Nichols moves for summary judgment, arguing that Mr. Smith cannot establish a *prima facie* claim of use of excessive force, and that even if a claim can be demonstrated, that he is entitled to qualified immunity.  Because the qualified immunity analysis itself involves an assessment of whether a Plaintiff has come forward with sufficient evidence to show a *prima facie* claim, the two contentions will be considered together.

The doctrine of qualified immunity protects government officials who perform discretionary government functions from liability for civil damages and the obligation to defend the action.  *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This immunity is only applicable, however, if the official's conduct did not violate clearly established constitutional or statutory rights that would have been known by a reasonable government official.  *See Harlow*, 457 U.S. at 818; *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005).  When a defendant raises a qualified immunity defense, the burden shifts to a plaintiff to satisfy a two-part test.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009).  A plaintiff must show that he or she had a constitutional right that was infringed (the "violation prong"), and that such right was clearly established at the time of the alleged infringement (the "clearly established prong").  Although a plaintiff must ultimately establish both elements to avoid application of the doctrine, the Court has discretion to consider the elements in any order.  *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009); *Green*, 574 F.3d at 1299.

With respect to the violation prong, a plaintiff must show that the defendant's actions deprived him or her of a constitutional or statutory right.  *See Albright v. Rodriguez*, 51 F.3d

1531, 1534 (10th Cir. 1995).  Identification of a constitutional right in the abstract is insufficient;

instead, a plaintiff must precisely articulate the clearly established right that was allegedly

violated and specifically identify the defendant's conduct that violated the right.  *See Green*, 574

F.3d at 1300.  This threshold inquiry is akin to the standard on summary judgment—taking all

facts in the light most favorable to the party asserting the injury, do the facts show the officer's

conduct violated a constitutional right?  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Simkins*

*v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005).

For the clearly established prong, the question is whether the identified right was clearly

established based on the specific facts of the case.  *Brosseau v. Haugen*, 543 U.S. 194, 199–200

(2004).  Typically, the inquiry is whether, on the operative date, there was binding authority

from the Supreme Court or Tenth Circuit (or the clear weight of authority from other circuits)

recognizing that particular conduct would constitute a violation of federal law.  *York v. City of*

*Las Cruces*, 523 F.3d 1205, 1211–12 (10th Cir. 2008).  The inquiry is not whether there was

previous case with identical facts, but instead, whether prior caselaw put the defendants on

notice that the alleged conduct would be unconstitutional.  *See Gomes v. Wood*, 451 F.3d 1122,

1134 (10th Cir. 2006).  This is essentially a legal question, measured by an objective standard.

*See Crawford-El v. Britton,* 523 U.S. 574, 589-90 (1998).

Because Sergeant Nichols has raised the defense of qualified immunity, Mr. Smith bears

the burden of demonstrating both a *prima facie* case of a constitutional violation and that the

conduct violated clearly established law.  The Court can begin with either prong of the qualified

immunity defense.  Here, the Court begins with the sufficiency of the Plaintiff's evidence to

establish a violation of a constitutional right.

## A.      Constitutional Violation

Excessive force claims in the prison setting are generally analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment.  *See Wilkins v. Gaddy*, __ U.S. __, 130 S.Ct. 1175 (Feb. 22, 2010) (slip op.); *see also Smith v. Cochran*, 339 F.3d 1205, 1210 n.2 (10th Cir. 2003).  The Eighth Amendment proscribes cruel and unusual punishment, which is defined as the "unnecessary and wanton infliction of pain."  *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992).  An Eighth Amendment claim involves two prongs: (i) an objective test that asks whether the alleged wrongdoing was harmful enough to constitute the unnecessary and wanton infliction of pain and (ii) a subjective test that asks whether the official acted with a "sufficiently culpable state of mind."  *See id.*; *Serna v. Colo. Dept. of Corr.*, 455 F.3d 1146, 1152 (10th Cir. 2006); *Smith*, 339 F.3d at 1212.

In the excessive force context, the first test examines the nature and extent of the force used in light of contemporary standards of decency.  *See Hudson*, 503 U.S. at 9.  The second test asks "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm."  *See id.* at 6–8; *Smith*, 339 F.3d at 1212.  Although treated as separate inquiries, the analysis under each test is informed by the other.  *See Hudson*, 503 U.S. at 9.  For example, the subjective reason for the use of force affects the objective determination of what level of force is socially acceptable.  Indeed, the Supreme Court has noted that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  *See id.* at 8; *see also Smith*, 339 F.3d at 1213 (holding that courts may infer malicious, sadistic intent from the conduct itself where there is no

legitimate purpose for the officer's conduct).[5]  As a consequence, the absence of a significant

injury does not preclude a finding of a constitutional violation.  *See Hudson*, 503 U.S. at 6–7.

In *Hudson*, the Supreme Court outlined several factors for courts to consider."[6]  These

factors include the degree of the injury suffered by the inmate, the need for application of force,

the relationship between that need and the amount of force used, the threat reasonably perceived

by the official applying the force, and whether the official employed any means to temper the

severity of a force.  *See Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321

(1986)); *see also Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996) ("In making [the

excessive force] determination, it is necessary for us to balance the need for application of force

with the amount of force used.").

Viewing the facts most favorable to Mr. Smith,[7] after initially refusing to comply with a

directive to submit to a strip search, he was removed to a distribution room where several

officers were present.  He consented to a strip search and was uncuffed, then withdrew his

consent and was recuffed to a waist restraint and ordered to sit down.  He told Sergeant Nichols

that he had experienced head trauma and difficulty breathing.  Sergeant Nichols asked if he was

------

[5] This is not to say, however, that every use of force, even if applied maliciously and sadistically, violates a prisoner's constitutional rights.  *See id.*  A use of force that is both *de minimus* and "not of the sort repugnant to the conscience of mankind" is not sufficient to violate a prisoner's Eighth Amendment rights.  *See id.*; *Marshall v. Milyard*, 2011 U.S. App. LEXIS 2003, at *6 (10th Cir. Jan. 31, 2011) (unpublished).

[6] The Court did not articulate whether these considerations were relevant to the objective or subjective factor.  As both factors are somewhat interrelated and both include considerations as to the context in which the force was applied, this Court understands the factors to be relevant to both factors and also more generally to the excessive force determination as a whole.

[7] Although Sergeant Nichols contests these facts, they are taken as true for purposes of this step in the analysis.

threatening correctional staff and he replied "no."  As he attempted to sit in compliance with the order, Sergeant Nichols lifted him, threw him to the ground and kneed him in the back struck him.  After he was thrown to the ground, he was in such a position and in such pain that he "could not resist or do anything wrong to myself or to any staffs."  *See* Response **(#22)** at 10. This caused him to lose his front tooth cap and cut his mouth, made it difficult for him to breathe, and shortly after the incident he lost consciousness.  Sergeant Nichols was removed from him and restrained by other officers.

The question presented is whether such facts demonstrate use of such serious and substantial force that it could be considered excessive.  Applying *Hudson's* subjective test, these facts are subject to two interpretations.  On one hand, they show erratic behavior by Mr. Smith—alternately resisting and then complying with orders of correctional staff.  On at least two occasions in the sequence of events, Mr. Smith resisted orders to submit to a strip search by correctional staff.  Sergeant Nichols could have believed that Mr. Smith was beginning to resist again.  On the other hand, in the moments before Sergeant Nichols acted, it appears that Mr. Smith was handcuffed, expressing submission by commenting upon his physical impairments and complying with the specific order to sit down.  It does not appear that there was any order or directives that Mr. Smith was specifically resisting, nor that application of any force was required to ensure Mr. Smith's compliance with the directive to sit down.  If he was attempting to do so, the force used by Sergeant Nichols is unexplained and apparently Sergeant Nichols did attempt to temper it in order to accomplish a particular objective.   Indeed, evidence that other officers pulled Sergeant Nichols off of Mr. Smith and restrained him suggests that Sergeant Nichols's actions were neither necessary nor appropriate to maintain or restore discipline.  To

10

the extent that there was no justification for Sergeant Nichols' actions, an inference that they were accompanied by a "malicious and sadistic" motivation can be made. *See Smith*, 339 F.3d at 1213. Thus, if the facts are interpreted most favorably to Mr. Smith, they are sufficient to satisfy *Hudson's* subjective test.

These facts are also sufficient to satisfy *Hudson's* objective test. If Sergeant Nichols's actions were unjustified from a penological standpoint, then his use of force violates societal standards. *See Hudson*, 503 U.S. at 8. The force he used was serious and substantial enough to cause physical harm to Mr. Smith - pain, difficulty breathing, bleeding, loss of his tooth crown and ultimately to experience unconsciousness. Although Mr. Smith did not suffer serious, lasting physical injury, he states that he could not breathe, he urinated on himself without knowing it, he cut his mouth and had his front tooth cap knocked out. These injuries are sufficiently painful injuries to indicate that the type and amount of force applied was serious enough to give rise to an Eighth Amendment violation.

Accordingly, viewing the disputed evidence in favor of Mr. Smith, the Court finds that he has presented sufficient evidence to establish a constitutional violation.

### B.    Clearly Established Right

Having determined that Mr. Smith has set forth sufficient facts for a *prima facie* case, the Court turns to the second prong of the qualified immunity analysis—whether his right to be free from use of excessive force was clearly established. Sergeant Nichols argues that a reasonable person in his shoes would not know, based on the relevant case law from the Supreme Court and Tenth Circuit at the time of the incident, that his conduct was unconstitutional.

The Court disagrees. The proscription against using excessive force and the standard by

11

which excessive force claims are determined has been established since well before the incident occurred.  Although Mr. Smith has not pointed to case law with directly analogous facts, the Court finds that it was clearly established that a correctional officer may not throw a prisoner to the ground, knee him in the back such that he could not breathe, and hit him in the ribcage for no reason other than that he had intermittently passively resisted orders for a strip search. Accordingly, Sergeant Nichols is not entitled to the protection of qualified immunity on Mr. Smith's claim of excessive force.

Given this determination, the burden shifts back to Sergeant Nichols to make the standard summary judgment showing that there are no disputed issues of fact that require a trial.  He has not made this showing.  Indeed, there is a clear factual dispute as to whether Mr. Smith was actively resisting orders of corrections officers prior to Sergeant Nichols' actions. A trial is therefore required.

## C.    Official Capacity Claims

Mr. Smith's Complaint does not specify whether he is suing Sergeant Nichols individually, or if he is also asserting an official capacity claim, which is actually a claim against the State of Colorado.  To the extent he asserts an official capacity claim, Sergeant Nichols moves for summary judgment pursuant to Eleventh Amendment immunity.

Bringing a suit against a state official in his or her official capacity is simply an alternative way of asserting a suit against the state itself.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment provides immunity to states in federal suits brought a citizen in which damages are sought.  *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990).  Because Mr.

Smith's claim of excessive force seeks recovery against an individual officer for discrete, past actions, his only remedy is an award of damages.  *See Hafer v. Melo*, 502 U.S. 21, 25–27 (1991). Accordingly, a claim against Sergeant Nichols in his official capacity is barred by the Eleventh Amendment.

  **IT IS THEREFORE ORDERED** that

(1) Defendant Sergeant Virgil Nichols's Motion for Summary Judgment **(#88)** is **GRANTED IN PART** insofar as it seeks a determination that the claim against Sergeant Nichols in his official capacity is barred by the Eleventh Amendment but **DENIED IN PART** insofar as it seeks summary judgment as to the claim against Sergeant Nichols in his individual capacity.

(2) A final pretrial conference is scheduled for **June 30, 2011 at 9:00 a.m.** in Courtroom A901 before Judge Marcia S. Krieger.  All provisions of the Court's Trial Preparation Order shall apply to the rescheduled conference.

Dated this 17th day of March, 2011

     **BY THE COURT:**

     _Marcia S. Krieger_____

     Marcia S. Krieger
     United States District Judge